T.C. Memo. 2005-202

UNITED STATES TAX COURT

GARY R. DAVIS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6343-04.                    Filed August 24, 2005.

<u>Robert D. Grossman, Jr.</u>, for petitioner.

<u>Paul K. Voelker</u>, for respondent.

MEMORANDUM OPINION

LARO, <u>Judge</u>:  Petitioner moves the Court under section 7430 to award him litigation costs of $7,893.75.[1]  Respondent objects to this motion, arguing:  (1) Petitioner did not exhaust his

--------

[1] Unless otherwise indicated, section references are to the applicable versions of the Internal Revenue Code, and Rule references are to the Tax Court Rules of Practice and Procedure.

administrative remedies, (2) respondent's position in this proceeding was substantially justified, and (3) some of the requested costs are unreasonable. We ordered the parties to stipulate the facts underlying this motion, and they have done so. We decide herein whether to grant petitioner's motion. We shall not.

## Background

Most facts were stipulated. We incorporate herein by this reference the parties' stipulation of facts and the exhibits submitted therewith. We find the stipulated facts accordingly. Petitioner resided in Las Vegas, Nevada, when his petition was filed with the Court.

For approximately the 13-month period ending in or about October 1999, petitioner and his then wife, Theresa Davis (Davis), owned and resided in a home in Las Vegas at 4302 Callahan Avenue (4302 Callahan). Petitioner and Davis separated at the end of that period, and for approximately the next 2 months, Davis resided at 4302 Callahan, and petitioner resided with relatives. On December 16, 1999, The Gary R. Davis Living Trust, Gary R. Davis Trustee, purchased a house in Las Vegas at 629 Mariola St. (629 Mariola). Petitioner resided at 629 Mariola from approximately December 1999 to approximately April 2003. Petitioner and Davis sold the home at 4302 Callahan on February 23, 2000, for $525,000.

On or about April 15, 2001, petitioner filed a 2000 Federal income tax return (2000 return) using the filing status of "Single". Petitioner's 2000 return was prepared by a certified public accountant named Gary Campbell (Campbell). Petitioner's 2000 return reported that petitioner's address was 4302 Callahan and that his total income and taxable income were $6,524 and zero, respectively. Petitioner's 2000 return reported that petitioner's total income consisted of taxable interest of $939, ordinary dividends of $103, business income of $93,886 (gross income of $208,170 less total expenses of $114,284), a capital loss of $3,000, taxable individual retirement account (IRA) distributions of $3,527, and passthrough losses totaling $88,931. Respondent processed petitioner's 2000 return on July 23, 2001.

Respondent received certain information returns relating to petitioner's 2000 return. In relevant part, respondent received: (1)A 2000 Form W-2, Wage and Tax Statement, reporting that petitioner had received wages of $165,586 and (2)a 2000 Form 1099-S, Proceeds From Real Estate Transactions, reporting that petitioner had received $525,000 from the sale of 4302 Callahan. On October 25, 2002, respondent mailed to petitioner at 4302 Callahan a Letter 2201(DO) (examination notice) stating that petitioner's 2000 return had been selected for examination.[2] The

---

[2] More specifically, the letter was addressed to petitioner and Davis (then known as Theresa L. Ricci), attention petitioner.

examination notice was an initial contact letter and did not offer petitioner an opportunity to meet with respondent's Office of Appeals (Appeals). One day before mailing the examination notice to petitioner, respondent had checked his computer records for petitioner's address. Those records listed petitioner's address as 629 Mariola. Respondent did not mail an examination notice to petitioner at 629 Mariola.

Petitioner timely filed (pursuant to extensions) a joint 2001 Federal income tax return (2001 return). Petitioner's 2001 return was prepared by Campbell and reported that petitioner's address was 4302 Callahan. Respondent received petitioner's 2001 return on October 21, 2002, and processed it on November 18, 2002.

On April 4, 2003, respondent checked his computer records for petitioner's address. Those records listed petitioner's address as 4302 Callahan. On the same day, respondent mailed a Letter 915(DO) (30-day letter) for 2000 to petitioner at 4302 Callahan. The 30-day letter informed petitioner that he could request a conference with the Appeals Office and was accompanied by two copies of the examination notice. On September 19, 2003, respondent mailed to petitioner at 4302 Callahan a Letter 1912(DO) that was accompanied by another copy of the examination notice. The Letter 1912(DO) stated that respondent's Small Business and Self-Employed Division had reviewed petitioner's

2000 return and detected that respondent had not received petitioner's agreement to the proposed changes. The Letter 1912(DO) stated that petitioner should contact the representative designated on the letter within 10 days or that a notice of deficiency would be issued to petitioner for 2000. The Letter 1912(DO) referenced and was accompanied by a publication that discussed the examination process and petitioner's appeal rights. On November 14, 2003, after not having received a response from petitioner as to the Letter 1912(DO), respondent's district office closed petitioner's case and recommended that a notice of deficiency be issued to petitioner for 2000.

Respondent received petitioner's timely filed (pursuant to extensions) joint 2002 Federal income tax return (2002 return) on October 19, 2003, and processed it on November 24, 2003. Petitioner's 2002 return reported that petitioner's address was in Las Vegas at 912 Sir James Bridge Way (912 Sir James Bridge). Petitioner had purchased 912 Sir James Bridge on April 7, 2003. Petitioner had sold 629 Mariola on April 18, 2003.

On January 15, 2004, respondent mailed a notice of deficiency for 2000 to petitioner at 912 Sir James Bridge. This notice determined an income tax deficiency of $107,844 and a section 6662(a) accuracy-related penalty of $19,740.60. For the most part, respondent determined in the notice that petitioner was taxable on the sales proceeds reported on Form 1099-S and was

not entitled to business expenses, itemized deductions, and exemptions claimed on the 2000 return.  The parties now agree that the deficiency and accuracy-related penalty are both zero.

### Discussion

Petitioner moves the Court under section 7430 to award him litigation costs of $7,893.75.  We may grant this motion if he meets all of the statutory requirements for such an award.  See sec. 7430(a), (b), and (c); Rule 232(e); see also Corson v. Commissioner, 123 T.C. 202, 205-206 (2004); Minahan v. Commissioner, 88 T.C. 492, 497 (1987); Han v. Commissioner, T.C. Memo. 1993-386.  The parties dispute the three requirements noted supra pp. 1-2.  We focus on the first of those requirements; namely, that a taxpayer exhaust administrative remedies available within the Internal Revenue Service (IRS) before petitioning this Court as to the underlying taxable year.  See sec. 7430(b)(1).  We conclude that petitioner has not met this requirement.

Section 301.7430-1(b)(1), Proced. & Admin. Regs., interprets section 7430(b)(1) to require generally that a party participate in an Appeals Office conference, if one is available, before petitioning this Court with respect to the underlying year.  See Haas & Associates Accountancy Corp. v. Commissioner, 117 T.C. 48 (2001), affd. 55 Fed. Appx. 476 (9th Cir. 2003).  Section 301.7430-1(e)(2), Proced. & Admin. Regs., states in relevant part that this requirement is met, in that a party's administrative

remedies within the IRS are deemed to be exhausted for purposes of section 7430, if

> The party did not receive a notice of proposed deficiency (30-day letter) prior to the issuance of the statutory notice [of deficiency] and the failure to receive such notice was not due to actions of the party (such as a failure to supply requested information or a current mailing address to the district director or service center having jurisdiction over the tax matter).

We understand petitioner to argue that he has met this requirement in that, he claims, he did not know his 2000 return was under examination until he received the notice of deficiency. According to petitioner, respondent sent all prior correspondence for that year to an address that, petitioner claims, respondent should have known was not petitioner's address. Petitioner points to the fact that respondent's records on October 24, 2002, listed petitioner's address as 629 Mariola, and he asserts that this listing required that respondent after that date send all correspondence (or at least copies of that correspondence) to petitioner at that address. Petitioner recognizes that respondent processed petitioner's 2001 return after October 24, 2002, and that this return reported petitioner's address as 4302 Callahan. Petitioner asserts that this reporting was an error that he did not notice but that respondent should have known about.

We disagree with petitioner's argument that he has met the requirement as to exhausting administrative remedies within the

IRS. Although petitioner notes correctly that respondent initially mailed the examination notice to petitioner at an address different from that shown in respondent's records, the most critical fact is that respondent correctly mailed both the 30-day letter and the Letter 1912(DO) to petitioner's most recently reported address approximately 9 months and 4 months, respectively, before issuing the notice of deficiency. The 30-day letter (and possibly the Letter 1912(DO)), and not the examination notice, allowed petitioner the opportunity to confer with Appeals as to 2000 before the notice of deficiency was issued. Even if petitioner failed to receive either of these letters, as he claims but which we decline to find as a fact, it was not as he claims due to respondent's lack of diligence; it was due to petitioner's own action of reporting 4302 Callahan as his address on his 2001 joint return.[3]

---

[3] Although we do not countenance the fact that respondent mailed the examination notice to petitioner at an address that was inconsistent with the address shown in respondent's records, and thus may have deprived petitioner of an opportunity to settle this matter at the examination level, an award of litigation costs does not necessarily follow from that action. A prerequisite to petitioner's award of litigation costs is that he have participated in an Appeals Office conference, unless one was not available, before petitioning this Court. We find as a fact that an Appeals Office conference was available in that respondent mailed both the 30-day letter and the Letter 1912(DO) to petitioner's most recently reported address approximately 9 months and 4 months, respectively, before issuing the notice of deficiency. While petitioner claims to have failed to receive either of these letters, it was due to his own action of reporting 4302 Callahan as his address on his 2001 joint return.

During the approximately 1-year period starting with the date when respondent processed petitioner's 2001 return reporting the 4302 Callahan address and ending with the date when respondent processed petitioner's 2002 return reporting the 912 Sir James Bridge address, petitioner's last known address was 4302 Callahan.[4]  Cf. <u>Abeles v. Commissioner</u>, 91 T.C. 1019 (1988); sec. 301.6212-2, Proced. & Admin. Regs. (effective January 29, 2001) (absent "clear and concise notification of a different address", a taxpayer's last known address is the one on the most recently filed and processed tax return, with exceptions for updated addresses obtained by respondent from an information bank of the Postal Service).  During that period, respondent sent both the 30-day letter and the Letter 1912(DO) to petitioner at 4302 Callahan.  While petitioner speculates that respondent should have known that petitioner did not then live there because respondent had previously been informed that petitioner and Davis had sold the property, we do not agree.  The mere fact that petitioner and Davis sold 4302 Callahan on February 23, 2000, does not necessarily mean that petitioner never lived there afterwards.  Such is especially so given the fact that Campbell, petitioner, and petitioner's wife who joined with him on the 2001

---

[4] When respondent processed petitioner's 2002 return, petitioner's last known address changed to 912 Sir James Bridge. Respondent mailed the notice of deficiency to that address in January 2004.

return each signed that return declaring under penalties of perjury that he or she had "examined this return" and that it was "true, correct, and complete".[5]

We hold that petitioner does not qualify for an award of litigation costs under section 7430. We have considered all arguments for a contrary holding and find those arguments not discussed herein to be irrelevant, without merit, or improperly raised in petitioner's reply to respondent's objection. To reflect the foregoing,

<u>An appropriate order will be</u>
<u>issued, and decision will be entered in</u>
<u>accordance with the parties' settlement</u>.

---

[5] Petitioner also relies erroneously on the fact that respondent knew before issuing the notice of deficiency that petitioner had at least at one time resided at 629 Mariola. As stated above, the reporting of the 4302 Callahan address on the 2001 return made that address petitioner's address of record at all relevant times thereafter.